[Civ. No. 2239.   Third Appellate District.—January 26, 1921.]

## FRANCESCO BRUNO, Respondent, v. SIMONE FRATELLI SEVERINI et al., Appellants.

[1] FINDINGS—ACTION FOR SERVICES—CROSS-DEMANDS.—In an action to recover compensation for personal services and for money expended, the court having found as to the various items of indebtedness from defendants to plaintiff, a further finding that "as an offset" to such indebtedness the plaintiff is indebted to the defendants in certain specified sums "for three tons of grapes . . . for boxes . . . for freight" and for "moneys received" is a sufficient finding as to the allegation of defendants' cross-complaint that plaintiff is indebted to them in a specified sum "for the balance of a book account for goods, wares, and merchandise sold and delivered by defendants to plaintiff."

[2] Id.—Liability for Board and Lodging—Inclusion in Compensation—Assumption.—In such action, the court having found that the defendants were indebted to the plaintiff for a given number of days' services at a specified sum per day, but not having made any finding as to the allegation of defendants' cross-complaint that the plaintiff was indebted to them "for board and lodging furnished," it will be assumed in support of the judgment that the compensation which the court found that plaintiff and his wife were entitled to for the services performed by them included their board and lodging.

[3] Id.—Number of Days Employed — Reference to Book.—In an action for compensation for personal services, where the plaintiff testifies that he worked a specified number of days for the defendants but on cross-examination states that the only way in which he could tell how many days he worked was by means of a book kept by his wife for the purpose of preserving a record of the days he worked, and that book is identified by the wife and admitted in evidence, the record of the extent of plaintiff's services as preserved in that book should be taken by the trial court as the basis of its finding as to the number of days he performed labor for the defendants.

[4] Id.—Excessive Judgment—Appeal—Remission of Excess.—While an appellate court cannot make a finding, where it is made conclusively to appear that there is absolutely no evidence whatever in the record supporting a finding in the full amount found in a case in which a money judgment is entered, an appellate court, being satisfied that the judgment is supported by a sufficiently buttressed finding for a sum less than the amount awarded by the judgment, may and should, in the interest of justice, order the judgment affirmed on the condition that the party in whose favor such judgment has passed remit so much of the judgment debt as may be in excess of the sum which is actually shown by the evidence to be due.

[5] Id.—Assignment of Claim—Sufficiency of Evidence.—In an action by the husband to recover compensation for services performed by the wife, testimony by the wife that she authorized her husband "to bring suit for the collection of the wages due" her is sufficient to justify the inference that she intended to and did assign her claim to the plaintiff for the purposes of collection.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge. Affirmed conditionally.

The facts are stated in the opinion of the court.

J. E. Ebert and W. E. Davies for Appellants.

H. W. Zagoren for Respondent.

HART, J.—The action is to recover the sum of $985.75, alleged in the complaint to be due plaintiff for labor performed, for the hire of a team of horses and for a certain sum of money paid out by plaintiff for defendants for certain merchandise at the latter's instance and request, and for services as a cook performed for defendants by plaintiff's wife, the latter having for the purposes of collection assigned her claim for said services against defendants to plaintiff.

The complaint is in three counts, and pleads the several claims referred to as upon an express contract and also for the alleged services performed in the form of a common count, upon a *quantum meruit*.

The answer specifically denies all the averments of the complaint, and, by way of a "counterclaim and cross-complaint," sets up a demand against plaintiff for the sum of $615.55, "for the balance of a book account for goods, wares, and merchandise sold and delivered by defendants to plaintiff, for board and feed furnished to horses of plaintiff, and for board and lodging furnished by defendants to and for the use and benefit of plaintiff, and for moneys paid out by defendants for plaintiff, at the special instance and request of plaintiff, between the —— day of ——, 1916, and about the 1st day of February, 1919; that the last item in said account was incurred during the month of January, 1919."

The court found: 1. That plaintiff was employed by defendants for a period of thirty-two days at the rate of $2.50 per day; 2. That plaintiff was likewise employed for the period of 150 days at the rate of $3.25; 3. That defendants were indebted to plaintiff for use of "teams and horses" for 100 days at the rate of $1.25 per day, aggregating the sum of $125; 4. That defendants became indebted to plaintiff for goods, wares, and merchandise, bought by plaintiff for said defendants, in the sum of $23.50; 5. That defendants were indebted to the wife of plaintiff for services rendered and performed as a cook for a period of six months, at the rate of fifty dollars per month, aggregating the sum of

$300; 6. That said Adelaide Bruno, said wife of plaintiff, had assigned "all her right, title, and interest in and to said claim to the plaintiff above named and the plaintiff is now the owner and holder thereof"; 7. That "as an offset to the above items of indebtedness this court further finds that the plaintiff above named is indebted to the defendants above named in the sum of: seventy-five dollars for three tons of grapes; three dollars for boxes; $1.75 for freight; $420, moneys received," totaling the sum of $499.75, which sum, the court further finds, should be and is "deducted from the amount due from the defendants to this plaintiff."

Judgment was, as before stated, rendered and entered accordingly for the plaintiff in the sum of $516.25, from which judgment the defendants prosecute this appeal.

It will be noted that the court found that the total number of days on which the plaintiff rendered services for the defendants was 182, and it is contended that there is no evidence to support that finding. It is further claimed that there is no evidence which supports the finding that the plaintiff's wife assigned to him her claim against the defendants for services rendered by her as a cook. A third point is that the court failed to find on the cross-demand set up in the so-called cross-complaint. These three constitute all the points pressed in the briefs for a reversal.

[1] The point last stated may first be disposed of, and as to it we express the opinion that the findings whereby the court allowed a total deduction of $499.75 from the total amount found in a preceding finding to be due the plaintiff is responsive to the pleaded cross-demand. It will be noted that the court found that the plaintiff was indebted to the defendants for grapes, boxes, and freight in the total sum of $79.75, the balance of the $499.75 found to be due from plaintiff to defendants being for moneys paid by the latter to the former. The "cross-complaint," it will be observed, is in general language, so far as the claim thus made involves goods, wares, and merchandise furnished by defendants to plaintiff, and as to that general item of the cross-demand, the finding is sufficient, and, indeed, is more specific than is the purported cross-complaint itself. [2] It is true that the cross-demand also includes "feed for horses and board and lodging furnished by defendants to and for the use and benefit of plaintiff," but, in support of the judg-

ment, it is to be assumed, as the findings naturally imply, that the compensation which the court found that plaintiff and his wife were entitled to for the services performed by them included their board and lodging. With respect to the feed with which defendants claim to have provided plaintiff's horses, it is to be observed that the testimony upon that proposition is so unsatisfactory that a definite finding could hardly be founded thereon. The only testimony directed to that question was that of Simone Severini, one of the defendants, and this is the testimony: "I fed Mr. Bruno's team all the time they were on my ranch, whether they worked or not, and on the 1st of November, 1919, he sold the team. The reasonable value of the feed furnished to the team *while they were not working* is from seventy-five cents to one dollar a day. Feed was very high." It is plainly manifest that the court could not have made a just or satisfactory finding on such testimony. It does not appear therefrom how much of the time or how many days the team "were not working," whether one or two days only or for a much longer period. But, without further considering in detail the point now under review, we state it to be our conclusion that, while the findings should have been more direct and specific upon some of the claims involved in the cross-demand, the evidence is such that no definite amount could have been found in favor of defendants for the feed alleged to have been furnished by them for plaintiff's horses, and, therefore, since there is ample support for a finding that defendants are indebted to plaintiff in some amount, we do not feel that we would be justified in reversing the judgment for the reason now being considered.

The point first stated above, viz., that there is no evidence to sustain the finding of the number of days during which the plaintiff rendered services for the defendants, is well taken. It will be noted that the court found that plaintiff "was employed by the above-named defendants for a period of thirty-two days at the rate of $2.50 per day, and for the period of 150 days at $3.25 per day." Thus the court, as pointed out above, found that the aggregate number of days during which the plaintiff performed labor for the defendants was 182.

That there is ample evidence that the plaintiff rendered services for the defendants for which the latter have not

recompensed him is a fact as to which the record furnishes no ground for controversy, but we have searched and re-searched the record in vain for any evidence, even the slightest, to support the finding that he so performed labor for the period of 182 days. The plaintiff testified that he worked for the defendants 112 days with his team and sixty days without the team, which, it will be noted, total 172 days only; that he was to receive six dollars per day when he worked with the team, and that, without the team, they would pay him for his labor the sum of three dollars per day, the wage they were paying other employees for like services. At no time, in his testimony, did plaintiff say that he worked for defendants a greater number of days than the number last above mentioned. On cross-examination, how-ever, he admitted that he could not from memory state how many days he worked for the defendants; that "the only way in which I can tell how many days I worked is through the book in which my wife marked down one line when I worked with the team and a cross when I worked without the team." He could not remember how many days he worked in any one of the several months during which he was employed by the defendants.

The wife of plaintiff, called by the latter as a witness, testifying from the book to which the plaintiff referred in his testimony, stated that the latter worked a certain specified number of days in certain named months of the year 1918, said book having been admitted in evidence and marked as "Plaintiff's Exhibit A." The witness testified that all she knew as to the number of days plaintiff worked was from information given her by the latter; that when he told her from time to time of the days he worked she would note the fact in the book by marking opposite the respective months specified in the book a cross to indicate the days he worked with the team and a vertical line to indicate the days he worked without the team. The book shows that there were 100 days indicated by a cross and 58 days by a vertical line.

Thus it will be observed that, if we accept the testimony of the plaintiff, given on his direct examination, that he worked 112 days with the team and sixty days without the team, we have 172 days only that he rendered services for the defendants, or ten days less than the court found that he had so performed work; but if the testimony of his wife

is to be taken, then he worked twenty-four days less than as found by the court. In either case, obviously, the court's finding as to the number of days the plaintiff worked for the defendants is, as counsel for the latter maintain, without evidential support; and in either case, the difference between the amount awarded and that to which the plaintiff is entitled, viewed in the light of the amount of the judgment, which includes the item of $300 for services as a cook performed by the plaintiff's wife, is substantial, and, therefore, the situation so presented is not one to which the doctrine *de minimis non curat lex* may justly be applied. And this is so whether the number of days improperly included in the findings is to be reckoned among those days for which the court found that he was entitled to $2.50 per day only or those for which he was to be paid at the rate of $3.25. If the basis of the calculation is to be ten days at $2.50 per day, then, obviously, the court awarded him $25 more than he was justly entitled to, and if on the basis of $3.25 per day, then he would receive by the judgment the sum of $32.50 more than he should have been awarded. If the testimony of the wife is to be accepted as to the number of days he worked, then, figuring his compensation at $2.50 per day, he received fifty dollars more than should have been awarded him, and at $3.25 per day, he was given by the judgment seventy-eight dollars in excess of the amount to which he was entitled. But, after a critical examination of the case as it is disclosed to us by the record, we have concluded that (as above stated), inasmuch as it appears very clear that both the plaintiff and his wife rendered for the defendants services for which they received no compensation, the cause should not, because of the excessiveness of the amount awarded by the judgment, be remanded for a new trial, whereby the parties would be put to the expense necessarily incident thereto. We think, therefore, that a just disposition of this appeal may be made as follows: That, upon a remission by the plaintiff of the amount of the judgment, to be hereinafter specified, within thirty days after the filing of this opinion, the judgment, with the said amount deducted therefrom, will stand affirmed, but that, if plaintiff fails within the time above designated to remit the portion of the judgment so to be stated, the judgment will stand as reversed.

The only question now to be determined is how much of the amount awarded by the judgment ought, under the evidence, to be remitted by plaintiff and deducted therefrom.

In determining this question it will be necessary to make a careful survey and analysis of the testimony. In the first place, we are constrained to observe that we have found no direct evidentiary reason for the distinction made in the findings for the wage rates for different days during which the plaintiff performed work for defendants—that is, that the plaintiff was entitled to $2.50 per day only for his services on certain days and $3.25 per day for certain other days. In other words, we are in the dark for a reason, if there was a substantial or any reason therefor, why the court should have found that the plaintiff's services were worth but $2.50 for a given number of days, while for another number of days his services were of the value of $3.25 per day. Neither in the evidence nor in the findings have we been able to find a ground or reason for the difference. It is shown by neither that there was any difference in the nature or character of the services rendered or any difference in the number of the hours of the working days. The difference was evidently not based upon the fact of the use and employment of plaintiff's team on the days for which he was allowed a wage rate of $3.25 per day, for the court, as seen, made specific allowance for the employment and use of the team in another finding, separate and distinct from the finding covering his own services and the compensation therefor, the allowance for the team being for 100 days at the rate of $1.25 per day. There is, however, some testimony from which the court could find that the reasonable value of the plaintiff's services was from $2.50 to $3 per day, the testimony being that the defendants paid some men $2.50 and others $3 per day for services rendered on their ranch, and it may be that, in view of this testimony, the finding of the court, upon the aggregate wage rate allowed the plaintiff, is not beyond what a straight allowance of three dollars per day would have amounted to, but this proposition is not of such importance in the decision of this case as to require us to stop and throw ourselves into what might prove to be a maze of arithmetical figuring to clear it up. The question now is, as stated, Upon what basis should there justly be a deduction from the judgment?

[3]  It will be noted that the plaintiff, on his direct ex-
amination, stated that he worked for the defendants 172
days, on 112 of which he also worked his team.  In so testi-
fying he made no attempt from his own memory to specify
the days or even the month during which he so worked.  On
cross-examination, it is further to be noted, he stated that the
"only way" in which he could tell how many days he
worked was by means of the book kept by his wife for the
purpose of preserving a record of the days he worked.  It is
evident from this admission that, when he stated on his direct
examination that he worked 172 days, he was not relying upon
his own independent and unaided memory as to the number
of days he was employed, but upon his memory of what the
said book showed was the number of days.  His testimony
upon this matter is obviously unsatisfactory, and, indeed, so
indefinite as to render it a very frail foundation for a satis-
factory finding in accordance with his general statement on
direct as to how many days he worked for the defendants.
It is plain that, in considering plaintiff's testimony, we are
not dealing with the question of the weight to be accorded
a witness' testimony, which is the exclusive function of the
court or the jury, according to the mode of the trial, but a
case where the face value of the testimony constitutes the
full measure of its evidentiary force.  In other words, the
frank admission of the plaintiff that there was one way only
in which he would be able to give the correct number of days
he performed services for the defendants shows that upon its
face his testimony, when given its full credit and weight, can
go no further than to corroborate the testimony of his wife
as to the number of days he actively rendered services for
the defendants, and his wife's testimony was, as seen, based
solely on the book in which she noted the number of days the
plaintiff worked as the latter, from time to time, reported
the number of days to her.  Thus it is to be seen that in the
last analysis we find that the only reliable testimony pre-
sented by the plaintiff as to the number of days the latter
performed labor for the defendants was in the book referred
to.  This being so, the record of the extent of plaintiff's ser-
vices as preserved in said book should have been taken by the
trial court as the basis of its finding as to the number of
days he performed labor for the defendants and so have
found that the former rendered services for the latter for

the period of 158 days. It follows from this view and conclusion that the court by its findings allowed plaintiff credit for twenty-four days in excess of the number of days on which he was by the evidence shown to have actually worked for defendants. These findings, in their entirety, cannot, of course, be upheld. But there is still another proposition in connection with this matter which must be determined, to wit: whether the excess number of days allowed the plaintiff by the judgment should be reckoned as among those days for which the court allowed plaintiff $2.50 or those days for which it was found that he was entitled to receive compensation at the rate of $3.25 per day. As stated, neither the evidence nor the findings reflect any light upon the question whether there was at times a difference in the character of the work or in the number of hours in the days put in in performing the services. Thus, necessarily from such a situation, we are left in doubt upon the question of the wage rate which should be the basis of reckoning the amount that should be remitted by the plaintiff from the judgment for the twenty-four days during which the court erroneously found that plaintiff had performed labor for the defendants; but we think that the very fact that we are so in doubt should inure to the benefit of the defendants. In other words, we think the defendants should be given the benefit of the doubt thus arising, and that, therefore, the twenty-four days in excess of the number upon which the evidence shows that the plaintiff worked should be reckoned among those for which the court allowed plaintiff a wage rate of $3.25 per day, which would amount, in the aggregate, to the sum of seventy-eight dollars. And this sum, we conclude, should be remitted by the plaintiff.

[4] It is to be understood, of course, that we are not here attempting to make a finding. This appellate courts cannot do. But, where it is made conclusively to appear that there is absolutely no evidence whatever in the record supporting a finding in the full amount found in a case in which a money judgment is entered, then such finding, to the extent that it authorizes judgment for a sum in excess of that which the evidence shows is actually due, is a nullity and is to be treated as such, and in such case a court of review, being satisfied that the judgment is supported by a sufficiently buttressed finding for a sum less than the amount

awarded by the judgment, may and should, in the interest of justice, order the judgment affirmed on the condition that the party in whose favor such judgment has passed remit so much of the judgment debt as may be in excess of the sum which is actually shown by the evidence to be due. Such is the case here. If the court had found, as only the evidence warrants, that plaintiff was entitled to be credited for services for 158 days, we should affirm the judgment. Indeed, it would in that case be our duty to do so. Then why reverse the cause for a new trial when, without that expense, both the plaintiff and the defendants may receive their just rights, respectively, by the course which we here adopt? We can see no just reason for the adoption of any other course by this court.

[5] The third point made by the appellants that there is no evidence that the plaintiff's wife assigned to him her claim against the defendants for services as a cook is devoid of substantial merit. The only testimony as to the execution of the assignment was by the plaintiff's wife, and is as follows: "I authorized my husband to bring suit for the collection of the wages due me." This testimony was sufficient, we think, to justify the inference that she intended to and did assign her claim to the plaintiff for the purposes of collection. It has been held that a mere verbal or oral request by one party to his debtor that the latter shall pay money due the former to a third party is sufficient to constitute an equitable assignment of the debt, and that to constitute such an assignment no express words are necessary, if from the entire transaction it clearly appears that it was the intention of the parties to pass the title. (*Puterbaugh* v. *McCray*, 25 Cal. App. 469, 471, [144 Pac. 149], and cases therein cited.) "Assignments for such purposes [of collection] are of frequent occurrence, and the defendant in an action by an assignee of a claim against him is only concerned to know that the assignment is of such a character as to bind the assignor." (*Leitch* v. *Marx*, 21 Cal. App. 208, 213, [131 Pac. 328].) That the assignor in this case will be bound by the assignment and by the judgment establishing its validity is a proposition clearly maintainable by the testimony that she turned the claim over to the plaintiff to sue in his own name for its enforcement.

Some assignments as to certain rulings upon questions of evidence are set forth in the transcript, but the absence of reference thereto in the briefs raises the presumption that they have been abandoned.

In accordance with the views herein set forth, the following order or judgment is hereby rendered: That, if the plaintiff, within thirty days from the filing of this opinion, remits in due and proper form the sum of seventy-eight dollars of the amount awarded him by the judgment, the said judgment shall stand as affirmed; but that if the plaintiff fails or refuses within said time to remit said sum ($78) from said judgment, then the judgment appealed from will stand as reversed and the cause remanded for a new trial.

Prewett, P. J., *pro tem.*, and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 25, 1921.