[Civ. No. 6162.   Second Appellate District, Division Two.—November 27, 1928.]

UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., and UMBERTO MENEGON, Respondents.

Edward C. Mills and Harold J. Hunter for Petitioner.

G. C. Faulkner for Respondents.

THOMPSON, J.— This is an original proceeding by which it is sought through the writ of review to annul an award of the Industrial Accident Commission. On June 9, 1926, Umberto Menegon, while employed as a plasterer by

Benni Damico at San Francisco, suffered an injury in the course of his employment consisting of a broken hand, a severe strain of the left lumbar muscles and sacroiliac joint. This accident occurred as he attempted to lift a bucket of mortar while on a roof when he slipped and fell. The insurance carrier was the Ocean Accident and Guarantee Corporation. On February 17, 1927, the Commission made its findings and award wherein it found that Menegon had "sustained a severe strain of the left lumbar muscles" and awarded him for total disability from June 9, 1926, to February 8, 1927, the sum of $705.24. Between four and seven days previous to May 24, 1927, Menegon started to work as a plasterer for P. A. Belanger and on that day, while attempting to lift a bucket of cement handed to him by another employee, he felt a severe pain and "click" in his back which again incapacitated him from working. The petitioner here was the insurance carrier, and in a second proceeding in which the Ocean Accident and Guarantee Corporation was joined, the Commission on April 27, 1928, found that the applicant had suffered an injury on June 9, 1926, "consisting of a severe strain of the left lumbar muscles and sacroiliac joint of his back." They also found that on May 24, 1927, the applicant sustained injury occurring in the course of his employment, "consisting of a strain of the left sacro-iliac joint" and that "said second injury caused temporary total disability continuing from May 24, 1927, indefinitely," entitling applicant to $20.83 per week. Award was made against the petitioner here for this sum and jurisdiction was reserved for the purpose of fixing permanent disability, if any, and also to fix amount of expenses for medical treatment. The Ocean Accident and Guarantee Company was in effect discharged from further liability. The petitioner claims that the injury suffered by the applicant on May 24, 1927, was a recurrence of the injury of June 9, 1926, and that all of the testimony establishes that the disability was the direct and proximate result of the injury sustained on the first date. It also asserts that if there be evidence to sustain the finding of a second injury the Commission was required under the law to apportion the liability between the insurance carrier at the time of the original injury and the carrier at the time of the aggravation. The respondent asserts that there is evidence sufficient to support the find-

ings and that there is no power resident in it to prorate disability between two separate injuries or to prorate in the case of aggravation of disability due to a prior injury as distinguished from aggravation of a pre-existing disease.

We are thus brought to the point where we must set down more of the testimony presented to the Commission. The applicant testified that his back "was bothering me awful bad, and I took a chance to start to work. Worked seven days and had the same sickness as before," and again, that he had suffered "severe pain ever since from that injury," referring to the first one. He also said in response to a query of whether he was able to work the few days before the second injury, "I ain't say I am able to do the work because the pain continue with me" and again replying to a similar query: "I had pain right along, 2 or 3 days a week, the last week not very much, but I had pain right along." There was testimony that between the injuries he was wearing a very heavy sacroiliac belt for the support of his back and when asked if he was doing his regular work as a plasterer for the four days prior to the injury of May 24, he said, "Yes I was doing my regular work, I wear the belt awful tight." Dr. Pierce, who had seen the applicant thirty or forty times, states that in his opinion the patient had never recovered from the first injury and that his second disability was an outgrowth of the injury suffered on June 9, 1926, amplifying with the statement "if I had never seen that record, I would still make my diagnosis of sacroiliac strain, but there is absolutely no question, as it is an unbroken chain, from his old injury to the present moment." This witness gave his opinion to the effect that unless there is a recovery from an injury of the character suffered by the applicant within six months there will be no recovery without an operation. No operation was performed upon the applicant. Dr. Michael Creamer, assistant medical director of the Commission, reviewed the record and in his report states: "The fact that he (the applicant) has worn a belt prescribed by Dr. McChesney of San Francisco, indicates to this department, that if he had entirely recovered, he was as yet not aware of it, since normal men do not wear a sacroiliac support. . . . To sum up, then, this applicant is at the present time disabled as the result of an accidental injury, said injury being exactly similar to a previous injury

11 months preceding, and in our opinion, he has not completely recovered from the first one.'' The same doctor stated 27 days later as follows: ''We are compelled to state positively that it is our opinion that there is a physical relation between occurrence of June 9, 1926, and May 24, 1927, and a review of the history impresses us that this condition is a recurrence of the earlier injury.'' Mr. Rodney F. Atsatt, to whom the question was referred as a medical referee, includes in his report two very significant statements. The first, with regard to disabilty, is: ''Total disability with reference to work in which patient was engaged when injured, as he would be subjected to frequently recurring attacks,'' and the second reads: ''The injury on May 24, 1927, was a recurrence of the more serious of the original injuries, namely, the sacro-iliac sprain.''

So far the evidence points all in one direction. We now come to the report which the respondent claims supports its finding. Dr. Thomas M. Foley in his report first says: ''Mr. Menegon states that on June 9, 1926, he received an injury to his back, and that he had *continuous pain and tenderness in his low back ever since that time''* (italics ours), and then renders his opinion, a part of which is as follows: ''This is undoubtedly a strain of the sacro-iliac joint on the left side. It is obviously a different injury from the one that he had in June, 1926, and which has been described in the letter of Dr. Campiche, *inasmuch as he had been fairly comfortable with pain only at times until the moment of this slip in the sacro-iliac joint.''* (Italics ours.) We call attention to the fact that the premise for the opinion is that the applicant had been fairly comfortable, with pain only at times, while in his statement of the history he records the complaint of Menegon that he had continuous pain and tenderness from the time of the first injury. The report of Dr. Campiche referred to was made on January 6, 1927, and he diagnosed the trouble at that time as a ''tear of the lumbar muscles.'' The report also contains this statement: ''At times the man says that pressure does not hurt him at all but as soon as he attempts to bend or to lift something the pain is such that he has to give up his work after 10 or 15 minutes. When he lies flat on his back the flection of the left hip also produces some pain in the lumbar region.'' It will be observed that this report was seven months, less three

days, after the first injury, and that the applicant had not recovered, but was still suffering. It is also fair to assume that when Dr. Foley says, referring to the first injury, "which has been described in the letter of Dr. Campiche" he had in mind the diagnosis thereof as a "tear of the lumbar muscles" to further justify his opinion that the second injury was obviously different. This first diagnosis, as well as the finding of the Commission in the first hearing, are patently contrary to fact and contrary to the fact found by the Commission in the second hearing. Our thought upon this state of the record may well be expressed in the words of the court in *In re Coburn*, 11 Cal. App. 604 [105 Pac. 924], as follows: "There is nothing to show that appellant is incapable of taking care of himself. There is but the mere opinion of a few witnesses as to appellant being incompetent to take care of his property, and these opinions are worthless because not based upon any facts or reasons." In the same opinion it is also recorded: "We are fully aware that an appellate court will not reverse a finding if there is a substantial conflict in the evidence; but the evidence, in order to raise a conflict, must be such as to present a fair and reasonable ground for a difference of opinion. The finding or verdict must have meritorious support in the evidence. A few general statements without substantial reasons is not sufficient to raise a conflict. (*Smith* v. *Belshaw*, 89 Cal. 427 [26 Pac. 834]; *Field* v. *Shorb*, 99 Cal. 662 [34 Pac. 504].)" A reading of that case will demonstrate that there was much more reason to say that the evidence was sufficient than there is in the present instance. The rule with respect to what does not constitute conflict has been phrased in different ways. In *Houghton* v. *Loma Prieta Lumber Co.*, 152 Cal. 574 [93 Pac. 377], it is put in these words: "A finding against the great weight and preponderance of the evidence can be maintained on the doctrine of 'conflict' only where the alleged conflict rests upon evidence, either direct or circumstantial, which so materially contradicts the testimony on the other side, or is so radically inconsistent with it, as to leave room in a fair and reasonable mind to find the fact either way." In *White* v. *Greenwood*, 52 Cal. App. 737 [199 Pac. 1095], it was stated this way: "While a finding will not be disturbed on appeal if there is a substantial conflict in the evidence from which it springs 'the evidence,

in order to raise a conflict, must be such as to present a fair and reasonable ground for a difference of opinion.' " (See, also, *Felsenthal* v. *Warring*, 40 Cal. App. 119 [180 Pac. 67].) We have no hesitancy in saying that the opinion here is so unsatisfactory in itself and so at variance with the whole current of the testimony as to raise no conflict and therefore entirely insufficient to give the respondent power to render the finding complained of. We are not unaware of the rule announced in *Head Drilling Co.* v. *Industrial Acc. Com.*, 177 Cal. 194 [170 Pac. 157], that "whether the subsequent incident or accident is such, or should be regarded as an independent, intervening cause is a question of fact for the commission, to be decided in view of all the circumstances, and its conclusion must be sustained by the courts whenever there is any reasonable theory evidenced by the record on which the conclusion can be upheld," but we are of the opinion that there is no reasonable theory evidenced by the record in this case upon which it may be sustained. With the single exception of this unsatisfactory expression of opinion the entire testimony establishes the fact that the incident of May 24, 1927, was a recurrence of the injury of June 9, 1926, and that the disability was the natural and proximate result of that injury, bringing it within the case of *Head Drilling Co.* v. *Industrial Acc. Com.*, *supra,* under which the award should have been against the original insurance carrier.

In view of the conclusion to which we have come it is unnecessary to discuss the question made concerning the power of the Commission to apportion the liability between the two carriers.

Award annulled.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 26, 1928, and a petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 24, 1929.

All the Justices present concurred.