[Civ. No. 9939. Second Appellate District, Division One.—March 25, 1936.]

HARRIET ELLWOOD, Appellant, v. ARTHUR NIEDERMEYER, Respondent.

Alfred T. Cluff, Allan F. Bullard and Sawyer & Cluff for Appellant.

Felix F. Bangs, John Beardsley and Charles E. Beardsley for Respondent.

EDMONDS, J., *pro tem.*—In the instant appeal, on December 19, 1935, a decision was made and an opinion filed by virtue of which the judgment that theretofore had been rendered in the action by the superior court was reversed. Thereafter, for the asserted reason that in reaching its conclusion herein, this court inadvertently had failed to give due consideration to certain issues that had been presented in the appeal, by order made by this court with reference thereto, a petition for rehearing of the appeal was granted.

The entire matter having again received careful consideration by this court, especially so as to the particular issues to which, in his petition for rehearing the respondent has directed attention, the following opinion and order correctly

represents a statement of the essential facts in the cause and the conclusions of law reached thereon, together with the underlying reasons for the present decision, to wit:

This action is for damages for breach of a contract for the sale of real estate.

In her complaint plaintiff pleaded a contract entered into between herself and the defendant. Under it she was to receive some lots in exchange for a furnished house owned by her. By a further provision defendant agreed to loan $10,000 to her upon the security of the lots she was to acquire. Plaintiff alleged that she had performed all of the conditions of the contract; that defendant in bad faith and without just cause had refused to perform within the 45 days limited by its terms for performance, or at all, notwithstanding her demand therefor; and that the value of the property she would have received had the exchange been carried out was some $12,000 more than that of her own. The defendant alleged that the contract had been entered into by him because of certain misrepresentations of the plaintiff, but that he had, notwithstanding them, · performed all of the conditions required of him. He also denied plaintiff's allegations of value.

The court found that at the time the contract was made plaintiff was the owner of the property agreed to be conveyed by her, but that the property to be conveyed by the defendant was owned by him and his wife, for whom he was guardian, in joint tenancy; that prior to the expiration of the 45 days fixed for the consummation of the exchange defendant had not deposited either his deed or money in the designated escrow; that plaintiff then gave defendant notice requiring him to perform within five days, but that this notice did not allow defendant sufficient time to perform. By a further finding the court declared that it was the intention of the plaintiff at the time of giving such notice and demand to withdraw from the agreement if the exchange could not be completed within the five days fixed by her notice and to sell her furniture, although she had been able and willing to perform at all times before. Other findings are that within the five days fixed by plaintiff's notice, defendant deposited $10,000 in escrow with a deed to the lots executed by him; that he immediately thereafter commenced proceedings for authority to sell his wife's interest in the lots, and some two

months thereafter deposited in the escrow a deed executed by him as guardian of his wife's estate conveying her interest therein under an order of court confirming the sale; that appellant had made no misrepresentations; that the value of the properties plaintiff was to receive under the contract was not in excess of that which she was to give; and that defendant had acted in good faith at all times. Judgment was entered in favor of defendant.

The evidence shows that at the time the contract was made the appellant was the owner of a furnished house, and that the real property was subject to a deed of trust to secure a note for $25,000 made by a previous owner. She entered into a written contract with Mr. Niedermeyer to exchange the house and furniture for three vacant lots. The lots which he was to convey to her were owned by him and his wife. Two days after the contract was signed Mrs. Ellwood signed escrow instructions at a bank, and thereafter deposited with the bank a deed to her property and other papers.

The 45-day period provided for in the exchange agreement expired on January 10th. On that date Mr. Niedermeyer had not signed any escrow instructions nor deposited any documents nor otherwise indicated any intention to carry out his part of the agreement. On January 19th Mrs. Ellwood by written notice informed Mr. Niedermeyer that she had deposited in the escrow instruments of conveyance of her property, and stated that she required him ''on or before the close of business on January 24, 1933, to complete and perform the said exchange on your part, and to execute and deliver to me proper instruments of conveyance of your said three lots, and to pay to me the sum of $10,000.00''.

At that time the note secured by the deed of trust on Mrs. Ellwood's property was in default, and the trustee was about to make a sale of the security. Pressed by her financial difficulties she had arranged for a sale of her furniture at auction on January 25th, the day following the expiration of the five-day period. On the afternoon of January 24th, the last of the five days fixed in Mrs. Ellwood's notice to Mr. Niedermeyer, he deposited in the escrow the sum of $10,000 and a grant deed to the three lots executed by him alone. He gave notice of this to Mrs. Ellwood, calling her attention to the fact that their exchange agreement provided ''that in the event errors appear in the titles to either or any of the prop-

erties, then the agreement shall be extended for a reasonable time that the same may be corrected". He demanded "an extension for a reasonable time to cure any defect which such title certificate when secured, may show in the title to the three lots . . . conveyed".

It is conceded by the defendant and impliedly found by the court that the deed which Mr. Niedermeyer deposited in the escrow only conveyed an undivided one-half interest in the lots. Title to the remaining interest was in his wife. She was under disability at the time, and her estate was being administered by Mr. Niedermeyer as her guardian. On the following day Mr. Niedermeyer, as guardian, caused proceedings to be commenced in his wife's estate for an order confirming a sale of an undivided one-half interest in the lots to one D. H. Carleton. On March 17th Mr. Niedermeyer's attorney deposited in the escrow a deed executed by Carleton conveying his interest in the lots, the sale to him having been confirmed by the probate court. However, Mrs. Ellwood's property had in the meantime been sold under the provisions of the deed of trust, and none of the deeds was ever delivered.

■ As the basis of her appeal from the judgment appellant contends that respondent did not perform his contract within the time limited for performance and made no valid tender of performance. She insists that where one who has agreed to convey property in which he only has an undivided one-half interest fails to acquire the outstanding interest within the time limited for performance, he may not thereafter perform by tendering a deed executed only by himself but purporting to convey the full title, and claim further time for performance under the guise of correcting an error in the title. Specifically her claim is that the evidence on the issue of performance does not support the findings. She also makes the point that the evidence does not support the finding of the court that the value of the property which she was to receive by the exchange was not in excess of that which she was to convey.

■ It was not necessary for the respondent in this case to have owned the fee simple title to the property which he agreed to convey to appellant in order to enter into the contract with her. But in such a case the vendor must be able to make good title at the time fixed by his contract. In the

early case of *Burks* v. *Davies*, 85 Cal. 110 [24 Pac. 613, 20 Am. St. Rep: 213], the court quoted from and followed a Minnesota case (*Goetz* v. *Walters*, 34 Minn. 241 [25 N. W. 404]), holding that the vendor under a contract for the sale of land which he did not own must be prepared at all times within the period fixed by his contract to convey a good title. When the vendee complied with his contract, the vendor, the Minnesota court said, "would have been entitled to no more time than was reasonably necessary for the execution of the papers". In the later case of *Hanson* v. *Fox*, 155 Cal. 106 [99 Pac. 489, 132 Am. St. Rep. 72, 20 L. R. A. (N. S.) 338], which is one of the leading cases on the subject, being widely cited, it was declared to be the settled rule in this state that "it is permissible for one to contract to convey title to land which he does not own, and·he is in default under such contract only when the vendee has performed his part of the contract and made demand for a title which the vendor is unable to furnish". This language was quoted with approval in *Lemle* v. *Barry*, 181 Cal. 6 [183 Pac. 148], and states the general rule.

Thus in *Haight* v. *Salter*, 260 Mich. 6 [244 N. W. 209, 210], the court said: "The fact that a person lawfully may contract to sell real estate which he does not own does not extend the contract time for delivery of a deed. He must take steps to acquire title in anticipation of his duty to deliver. After payment of the contract price, the vendor is not entitled to time to make title. He is entitled only to a reasonable time to execute the proper conveyance. (39 Cyc. 1326 et seq.; 27 R. C. L. 524.)"

In *Myers* v. *Fidelity-Philadelphia Trust Co.*, 290 Pa. 283 [138 Atl. 834], the court had occasion to pass upon a case where several joint owners were sued to recover money paid on an unconsummated agreement for the purchase of real estate. The defendants could not deliver title to the property at the time called for by the contract because it was subject to a lien for debts. The court said: "Defendants frankly admit that plaintiff was entitled to have a marketable title, and that, at the time of settlement they were unable to give it, because of the lien of those debts. They claim, however, that plaintiff had no right to rescind the contract at that time, because (1) he should have given them an opportunity to apply to the orphan's court, . . . for leave

to sell the property free from the lien of those debts; and (2) he had made no tender of performance on his part. These objections are unavailing." The obligation of the vendor is succinctly stated in *Walsh* v. *Colvin*, 53 Wash. 309 [101 Pac. 1085, 1086, 1088], as follows: "While a vendor may have a reasonable time in which to prepare and deliver a deed, he does not have a reasonable time in which to acquire title to the property to enable him to perform his contract. If a vendor agrees to convey title at a given time and has no title when the date for performance arrives, the question of a reasonable time for preparing a deed does not enter into the case."

■ In the case at bar respondent agreed to convey property to which he only had title to an undivided one-half interest. The time which he asserts he was entitled to was used by him for the purpose of procuring by purchase title outstanding in another individual. Under the authorities, in such a case he was entitled only to the time reasonably necessary to execute and deliver the deed. The time fixed by the appellant was manifestly sufficient for this purpose because respondent delivered his deed conveying all the title in him, as demanded by the vendee. Respondent contracted at his peril for the delivery of title to property he did not own, and having so contracted, appellant was entitled to call for delivery of a deed conveying a marketable title in fee simple at any time she complied with her part of the agreement and within the period provided for performance. The court found that Mrs. Ellwood was able and willing to deliver title to her property at all times up to the expiration of the period fixed by her notice and demand. This finding is not challenged by respondent. It follows that the evidence does not support the finding that respondent performed his contract.

■ But respondent asserts that if he breached the provisions of the contract to be performed by him, appellant is faced with the findings of the trial court that there was no bad faith on his part, and that the value of the property which appellant was to receive under the contract was not in excess of the value of the property which she was to convey. Appellant's answer to this contention is that these findings are not supported by the evidence.

By the allegations of the complaint appellant charged that the respondent in bad faith and without just cause failed and

refused to carry out the provisions of the contract. By these allegations appellant evidently sought to bring herself within the provisions of section 3306 of the Civil Code, reading as follows:

"The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land."

The record shows that the case was tried upon the theory that the damages, if any, recoverable, were to be measured accordingly. From respondent's testimony it appears that he had previously sold property belonging to his wife through proceedings in the matter of her estate. He admitted that he knew that the approval of the court was necessary for the consummation of the contract which he had made. Yet he did nothing definite towards securing the required order of court until after appellant had served him with notice requiring him to perform. His failure to place himself in a position where he could carry out the contract which he had made clearly amounts to bad faith within the meaning of the statute, and a finding to the contrary is not sustained by the evidence. (*Haight* v. *Marin Municipal Water Dist.*, 208 Cal. 753–756 [284 Pac. 926].)

The next point to be considered is the finding concerning value. Two witnesses were called by the appellant to place a value on the real estate, which, it will be recalled, was at the time subject to a mortgage to secure a note of $25,000. Each testified that the value did not exceed the amount of the mortgage note. The highest value placed upon the furniture was $3,000. Respondent testified that the value of the lots which he agreed to convey was $8,000. Two other witnesses placed their value at $8,750 and $15,000, respectively. It therefore appears from this evidence that the property which appellant was to receive in the transaction was worth at least $5,000 more than that which she was to give. If it is necessary, as contended by respondent, to deduct taxes and

unpaid interest of some $1500 on her property she would still have the advantage by about $3,500.

But respondent relies upon the testimony of an expert appraiser called by him that appellant's property was worth $30,000. This figure would make the values equal, taking the lowest value placed upon respondent's property. However, this witness so qualified his answers that they have no evidentiary value. Upon cross-examination he said: "The appraisal I made was assuming a clear property. . . . I don't know what it might sell for, assuming it had upon it a $25,000 mortgage which was past due. . . . I don't believe anybody could put a value on it. I don't believe anybody could give a figure that would represent the clear market value."

It therefore appears that his testimony should have been entirely disregarded by the trial court, and without it there is no basis for a finding that the values of the properties to be exchanged were equal.

It is of course true "that an appellate court will not reverse a finding if there is a substantial conflict in the evidence, but the evidence, in order to raise a conflict, must be such as to present a fair and reasonable ground for a difference of opinion. The finding or verdict must have meritorious support in the evidence. A few general statements without substantial reasons is not sufficient to raise a conflict." (*United States F. & G. Co.* v. *Industrial Acc. Com.,* 95 Cal. App. 186, at 190 [272 Pac. 589].) In that case the opinion of a physician was the sole basis for a finding of disability. The court said: "We have no hesitancy in saying that the opinion here is so unsatisfactory in itself, and so at variance with the whole current of the testimony, as to raise no conflict, and therefore entirely insufficient to give the respondent power to render the finding complained of."

In another case it was said "that the statement of a mere opinion or conclusion by a witness in his direct examination could have no weight as against facts stated by him in his cross-examination which are necessarily opposed to such opinion". (*Burns* v. *Jackson,* 53 Cal. App. 345, at 347 [200 Pac. 80].) The same court examined and considered the testimony of a plaintiff who, upon cross-examination, referred to certain records as the basis for his statements on direct examination. From these records, which were before the court, it was evident that the witness' testimony on direct examina-

tion was incorrect. In holding plaintiff's testimony insufficient to support a finding, the court said: "It is plain that, in considering plaintiff's testimony, we are not dealing with the question of the weight to be accorded a witness' testimony, which is the exclusive function of the court or jury, according to the mode of the trial, but a case where the face value of the testimony constitutes the full measure of its evidentiary force." (*Bruno* v. *Severini*, 51 Cal. App. 163, at 171 [196 Pac. 501].)

In the more recent case of *County Sanitation District, etc.,* v. *Averill*, 8 Cal. App. (2d) 556 [47 Pac. (2d) 786], appellant urged that the opinion of an expert as to value had been erroneously stricken out by the trial court. The court said: "A brief analysis of the basis of the opinion as to values will show it to be wholly intangible and fanciful. . . . Since damage from this source is not recoverable in this action, if it is recoverable at all, we find nothing in the stricken testimony that would support a tangible claim for damages."

Respondent contends that he has a complete defense to this action, notwithstanding his failure to deliver title, by the following provision of the exchange agreement: "In the event that errors appear in the titles to either or any of said properties, then this agreement shall be extended for a reasonable time that the same may be corrected. In the event any error cannot be corrected, this agreement shall be null and void, except as to the payment of commissions, unless the title to the property affected is accepted subject thereto." However, this provision relates to "errors" in the title. It would be an unusual construction of this language to apply it to an absence of title. It obviously refers to some defect in the title which is subject to correction, or, at least; one which it might reasonably be assumed could be corrected even though it was afterward found that the assumption was erroneous. It is not so broad as the language of the contract in the case of *Crosby* v. *Wynkoop*, 56 Wash. 475 [106 Pac. 175], which is relied upon by respondent, which provided that the agreement there considered should be void "if said abstract does not show title or cannot be made to do so within 10 days from notice of defects".

The judgment is reversed.

Houser, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 23, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 21, 1936.