[Civ. No. 16195.   Second Dist., Div. Three.   Nov. 24, 1948.]

CARLYLE F. WILSON et al., Respondents, v. ROBERT W. BIDWELL, Appellant.

Merriam, Rinehart & Merriam for Appellant.

Anderson, McPharlin & Connors for Respondents.

WOOD, J.—In this action for specific performance or for damages if specific performance cannot be decreed, the court found, among other things, that at all times mentioned herein the defendant and his wife, Anna M. Bidwell, were the owners of the real property involved herein and that said property was at said times their community property; that on March 23, 1946, the plaintiffs and defendant (the husband) entered into a written contract in the form of escrow instructions whereby the plaintiffs agreed to buy and the defendant agreed to sell said property for $10,350; that the date specified in the agreement for performance was April 23, 1946; that prior to said April 23d the plaintiffs and defendant entered into a written agreement extending the time for performance of said contract to and including May 23, 1946; that neither said contract nor said extension agreement was signed by the wife or by anyone on her behalf; that on said March 23d the plaintiffs delivered to the escrow holder, as part payment of the purchase price, the amount of $2,180; that on and prior to said May 23d plaintiffs were ready, willing and able and offered to perform all the conditions on their part to be performed; that the defendant "excused the plaintiffs from performance by May 23, 1946, waived said time for performance and granted plaintiffs reasonable additional time in which to perform under said contract"; thereafter on May 24, 1946, prior to the expiration of the reasonable time for performance granted by defendant to plaintiffs, and while said contract was in effect, and prior to any default on the part of plaintiffs, the defendant wrongfully and in bad faith repudiated said contract and refused to perform it; that a tender thereafter by the plaintiffs of the sum due would have been a useless act and was excused; that defendant never deposited in said escrow a deed to said property; that on said May 24th the reasonable market value of the property was more than $900 in excess of said contract price; and that by reason of said breach of contract the plaintiffs were damaged in the sum of $900. The court concluded that "the plaintiffs are entitled to a judgment of specific performance against defendant but by reason of the fact that through no fault of the plaintiffs the defendant cannot be compelled to convey said property, specific performance is

denied and in lieu thereof plaintiffs are entitled to judgment against defendant [the husband]'' for $900 damages. The judgment was that plaintiffs recover $900 from defendant.

The findings to which appellant takes exception are: (1) that appellant (defendant) ''excused the plaintiffs from performance by May 23, 1946, waived said time for performance and granted plaintiffs reasonable additional time in which to perform under said contract''; and (2) that appellant wrongfully and in bad faith repudiated the contract and refused to perform it. He asserts that the evidence was insufficient to support those findings.

The escrow officer testified that on May 22d he told the appellant that the buyer was concerned about the expiration of the escrow, that the buyer was awaiting the closing of another escrow in order to complete this one, and that he had not deposited the money; that appellant then replied that ''a matter of a few more days would not make any difference to him [appellant]''; that on the same day he (escrow officer) conveyed that information to Mr. Wilson, one of the buyers. Mr. Wilson testified that on May 22d he asked the escrow officer if the escrow was ready to be closed and if the escrow officer needed the buyer's money; that the officer replied that the escrow was not quite ready to close, that some papers were missing, and that the seller had told him that a few more days would not make any difference; that on May 23d he asked the escrow officer if the escrow was ready to be closed and if he should get his money into escrow; that the officer replied that the papers were not quite ready, that the escrow was not quite ready to close, that it was not necessary to ask about it every day, that the seller had said that a few more days would not make any difference, and that the officer would let Mr. Wilson know (when the papers were ready); that on May 24th a representative of the escrow holder told him that a cancellation of the escrow had just been placed in escrow; that he (Mr. Wilson) then went to see the appellant and asked him why he had cancelled the escrow; that appellant replied that he ''had just changed his mind about selling''; that after some conversation about getting the money required to close the escrow, the appellant said he would meet him at the escrow office the next morning (May 25th) at 9 o'clock and make final arrangements to complete the escrow; that Mr. Wilson waited at the escrow office the next day (Saturday) from 9 a.m. to 12:30 p.m.—until the bank closed, and that appellant did not arrive there; that

on May 24th, after talking with appellant, he (Mr. Wilson) went to the escrow and gave the escrow officer his check for $4,262.34; that prior to writing the check he made arrangements to obtain a loan from the bank upon which the check was drawn, in order to have sufficient funds in the bank to pay the check; that after appellant failed to appear at the bank (on the following day) as agreed, he (Mr. Wilson) "let the check go back" to the escrow unpaid because he did not want to tie up that additional money in an escrow which could not be closed. The check was returned unpaid to the escrow with the notation "refer to maker" attached to the check. There was substantial evidence that the buyers were ready, able and willing to comply with the escrow instructions on their part to be performed.

The appellant testified that he did not tell the escrow officer that a few more days would not make any difference to him; and he testified that, in reply to Mr. Wilson's request that he meet him at the bank, he told Mr. Wilson he would not meet him there.

As to appellant's exception to the finding that he (appellant) excused the plaintiffs from performance by May 23d, and waived said time for performance and granted additional time, appellant argues: that the court erred in receiving testimony to the effect that the time for performance, provided in the written agreement, was orally extended; and that such oral evidence could not support any finding to the effect that the escrow agreement had been modified. ■ "It is a general rule that an optionor who has given the right to purchase property within a specified time may not do any act or omit to perform any duty calculated to cause the optionee to delay in exercising the right." (157 A.L.R. 1312.) In *Wilson* v. *Bailey*, 8 Cal.2d 416 [65 P.2d 770], plaintiff had a written option to purchase certain property from defendant within a specified time and, prior to the expiration of the time provided therein, the plaintiff asked the defendant to extend the time for performance. Defendant therein replied that he would not give an extension in writing but that he would tell plaintiff in the presence of another person that he would extend the option agreement for 30 days. The court therein said (p. 424) that it was a proper case for application of the rule of equitable estoppel; that prior to the expiration of the option, at a time when plaintiff was negotiating with interested third parties for an advance of money to enable her to exercise the option, the defendant assured plaintiff

that it would not be necessary for her to exercise the option within the given time but that for 30 days he would do nothing in the matter; and that the "irremediable change of position by the plaintiff in reliance upon the promise of the defendant justified the trial court in refusing to listen to the defendant seeking to deny the truth of his own representations." The court also said in that case (p. 421) that it is well settled that certain contracts to be enforceable are required to be in writing, and that "It is also equally well settled that the facts of a particular case may give rise to an equitable estoppel against the party seeking to set up the statute of frauds and foreclose such party from relying thereon." The court said further in that case (p. 422) "that a written contract may not be varied or modified by an executory parol agreement, nevertheless, it is also true that the facts of a particular case may give rise to an equitable estoppel against the party who denies the verbal modification." In *Connolly* v. *Lake County Canning Co.*, 95 Cal.App. 768 [273 P. 611], plaintiff sought to quiet title to real property. In that case the cross-complainant (respondent) obtained an option in 1916 to purchase the real property prior to April 1, 1919, and the respondent decided in February, 1919, to exercise its option, but the written option could not be found—it having been misplaced during a change in the office personnel of the respondent company. A new manager of the respondent company therein knew of the existence of the option and knew that plaintiff was one of the signers of it but he did not know the names of the numerous individuals holding record title to the property. The plaintiff (appellant) therein, who was an abstracter of titles, was employed by respondent company to obtain a correct list of the record owners of the property, but plaintiff failed to obtain the information on or prior to April 1, 1919 (the expiration date of the option), and stated falsely that the information was not available from the records. The respondent therein tendered to appellant, on April 10, 1919, his share of the purchase price, but appellant refused to accept it, upon the ground that the tender had not been made within the time fixed in the option. The court therein said (p. 771) : "The foregoing facts and circumstances are amply sufficient in our opinion to support the conclusion reached by the trial court that the delay in exercising said option was due to the acts of the appellant and that therefore he was estopped from taking any legal advantage of such delay." As

above shown, the trial court, in the present case, found that defendant had waived strict performance and had granted plaintiff a reasonable time after May 23d in which to comply with the agreement. Defendant's statement to the escrow officer, that a few more days would not make any difference to him, was repeated to plaintiff by the escrow officer, and plaintiff relied and acted thereon. Defendant cannot be heard to repudiate that statement to the detriment of plaintiff. The finding of the trial court herein, regarding waiver and granting additional time for performance, is supported by the evidence. Plaintiff's offer of performance on May 24th was timely for the reason that defendant was estopped to take advantage of a delay which he had encouraged. Although plaintiff did not deposit in escrow the money required of him, his failure to do so was excused for the reasons found by the court, namely, that defendant had already made known his refusal to go through with the sale, and that a tender by plaintiff would be useless.

Appellant's further contention, that the evidence was not sufficient to support the finding that appellant in bad faith repudiated the contract, is not sustainable. The appellant alleged in his answer that on March 23, 1946 (when the instructions were made), he and his wife were the owners of the property and that it was held as community property; that his wife had not signed the original instructions or the modification thereof. In other words, he defended the specific performance part of the action on the ground that his wife had not signed the agreement. The appellant testified that his business was that of building and selling houses, and that he had had "quite a bit" of transactions in selling real property; that he knew that his wife had to be a party to his contract to sell community property; that he did not put the deed in escrow because "ordinarily I never do it until the escrow is ready to close . . . and all the money is up . . . then I pitch in a deed . . . so as a matter of fact I usually go in there the same day or a couple of days before and pitch in the deed if I see the thing is going through." It does not appear that appellant informed respondents that it was community property. There is no evidence that appellant's wife would not join in the contract. Bad faith may be inferred from appellant's conduct in making the contract regarding community property and doing nothing to obtain the conveyance of his wife's interest, and from his conduct in cancelling his escrow instructions under the circumstances

herein set forth. In *Ellwood* v. *Niedermeyer*, 12 Cal.App.2d 699 [56 P.2d 279], the defendant, who was his wife's guardian, made a contract to convey real property owned by himself and his wife. In that case the husband deposited in escrow a deed signed by himself only. The court therein said, at page 707: "He admitted that he knew that the approval of the court was necessary for the consummation of the contract which he had made. Yet he did nothing definite towards securing the required order of court until after appellant had served him with notice requiring him to perform. His failure to place himself in a position where he could carry out the contract which he had made clearly amounts to bad faith...."

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.