Maymie S. HALL, Plaintiff-Appellant,

v.

SPOT MARTIN, Inc., and Pacific Employers Insurance Company, Defendants-Appellants,

and

Maryland Casualty Company, Defendant-Respondent.

No. 45895.

Supreme Court of Missouri, Division No. 1.

Sept. 9, 1957.

Ralph Shepard, Brandom & Brandom, Kansas City, for plaintiff-appellant, Maymie S. Hall.

Harold T. VanDyke, Davis, Thomson, VanDyke & Fairchild, for defendants-appellants Spot Martin, Inc., and Pacific Employers Ins. Co.

Henry W. Buck, John R. Gibson, Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, for respondent, Maryland Casualty Co.

HOLMAN, Commissioner.

This is a proceeding under the Missouri Workmen's Compensation Law. Section 287.010 et seq. RSMo 1949, V.A. M.S. The employer, Spot Martin, Inc., and insurer, Pacific Employers Insurance Company, have appealed from the judgment of the circuit court affirming an award in favor of the employee. While the appeal was pending in the circuit court the claimant-employee died from a cause which we will assume was not the result of the injury or injuries in question, and his widow (the surviving dependent) was substituted as plaintiff-claimant. Section 287.230(2) and 287.240 RSMo 1949, V.A. M.S. She has also appealed and contends that the award should have been for a larger sum than was allowed by the Industrial Commission. The award was for

an aggregate amount of $10,894.37. Since the compensation that had accrued at the time this appeal was taken, and the items of medical expense included in the award, totaled $7,884.37, we have appellate jurisdiction by reason of the amount in dispute. Article V, Section 3, Constitution of Missouri, 1945, V.A.M.S.

Two separate claims were filed by the employee. These claims were consolidated and the final award of the Industrial Commission disposed of both. The first claim sought compensation for a back injury which was received on July 10, 1954, in an accident which was alleged to have occurred when the employee "was pulling hydraulic pump off of tractor and pump fell on employee, knocking him to the ground." At that time Pacific was the compensation insurer of the employer. In the second claim the foregoing back injury was alleged to have been aggravated by an accident which is said to have occurred on February 15, 1955, while employee was "moving motor while in twisted position, slipped and twisted back." At that time Maryland Casualty Company was the insurer for the employer. This second claim was thereafter amended so as to also allege that the accident aggravated a carcinoma from which it was later discovered the claimant was suffering.

In the early part of July, 1955, after a hearing before a referee, temporary awards were entered upon each claim. The referee found that an accident, resulting in injuries and disability to the employee, occurred on each of the alleged dates, and Pacific was ordered to pay compensation and provide treatment, while Maryland was required only to provide medical treatment until a further determination could be made. Additional hearings were thereafter held before the referee and finally, on March 2, 22, and 23, 1956, evidence was heard by the Industrial Commission. A final award was entered by the Commission on March 27, 1956, which provided that Pacific pay compensation in the sum of $35 per week for 200 weeks to begin as of July 11, 1954, sub-

ject to a credit of $280 for compensation previously paid. That insurer was also directed to pay various medical and surgical obligations incurred by the employee in the total sum of $4,174.37.

The Commission found that the employee was injured in an accident that occurred on July 10, 1954, which happened when "employee was attempting to pull a hydraulic pump off a tractor that he was working on; the pump suddenly came loose; employee fell backwards 10 or 15 feet and the pump fell with him, and he was knocked down to the plywood floor striking his back," and as a result thereof sustained "fifty per cent permanent partial disability of the body as a whole." We quote from the "Additional Findings of Fact and Conclusions of Law" as follows:

"We find from all the evidence heard before Referee John S. Jenkins and the evidence heard before the full Commission that the employee, Jess W. Hall, sustained an accident on July 10, 1954, arising out of and in the course of his employment with Spot Martin, Inc., and that as a result of said accident, and that accident alone, he sustained 50 per cent permanent partial disability of his body as a whole (50% of 400 weeks, or 200 weeks).

"We further find that the disability sustained by employee as a result of the accident on July 10, 1954, was the result of injuries to his back, and particularly a ruptured or herniated intervertebral disc or discs in his back. We further find that employee is presently suffering from a carcinoma of the prostate with metastasis to the bone, and that by reason of this condition and the disability in his back, employee is now totally and permanently disabled. We have considered granting this employee permanent total disability as provided by Section 287.200, RSMo 1949, [V.A.M.S.], but we conclude and find that employer and its insurers are not responsible for the disability resulting from the carcinoma nor for any aggravation or acceleration of said carcinoma. But this finding does not ex-

cuse employer and its insurer, Pacific Employers Insurance Company, from providing medical and hospital attention for this employee and the disability existing in his back.

"We further find that the Pacific Employers Insurance Company is liable to this employee for all of the compensation granted herein and for all the medical and hospital expenses incurred by employee to cure and relieve him of his disability relating to his back and for all future medical and hospital attention required by this employee to cure and relieve him of his disability relating to his back because on or about July 10, 1954, when the accident described in this award occurred, the Pacific Employers Insurance Company was the insurer of the employer, Spot Martin, Inc.; and we further find that all of the incidents and accidents described by the employee as occurring after July 10, 1954, were occasioned by the weakened condition of his back and were the result of the accident that occurred on or about July 10, 1954. Manley v. American Packing Co., 363 Mo. 744, 253 S.W.2d 165; Larson, Workmen's Compensation, Sec. 95.12. * * *

"Maryland Casualty Company is a party to this consolidated case by virtue of the fact that they were the insurer of the employer, Spot Martin, Inc., on February 15, 1955, when the employee suffered a second accident or incident which we have found, as stated above, to be due to the weakened condition of his back, resulting from the accident of July 10, 1954, and, therefore, we find and conclude that Maryland Casualty Company is not liable for any disability relating to this employee's back nor for any aggravation of his back disability or condition as alleged in his claim for compensation dated May 19, 1955. The employee also claims in his claim for compensation, in case No. MM–22374, that the accident or incident of February 15, 1955, aggravated and accelerated the carcinoma of the prostate with metastasis. We are not convinced from the evidence in this case and particularly the medical evidence

that the carcinoma which the employee is suffering has been aggravated or accelerated by the accident or incident of February 15, 1955, and, therefore, we find and conclude that the employer and the Maryland Casualty Company are not responsible for nor liable for any disability and/or medical attention caused or required by the carcinoma."

Upon this appeal Pacific contends (1) that the Commission erred in concluding that the alleged accident of February 15, 1955, was caused by the weakened condition of the employee's back and was the result of the accident of July 10, 1954; (2) that there was no competent evidence from which it could be reasonably inferred that Hall sustained fifty per cent disability as a result of the accident occurring on July 10, 1954; and (3) that the Commission acted in excess of its powers in ordering payment of medical and hospital bills which were not due to disability resulting from accident. Maryland, of course, seeks to defend the finding of the Commission that all of the employee's disability resulted from the accident of July 10, 1954. Plaintiff-appellant here contends that the award of the Commission should have been for permanent total disability resulting from one or the other, or both, of the alleged accidents.

■ ■ "In reviewing a compensation case we have the duty to determine whether the Commission's award is supported by competent and substantial evidence upon the whole record. Sec. 22, Art. V, Const. of Mo. 1945, V.A.M.S. This court has said that 'This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Of course, the reviewing court should adhere to the rule

of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony.' Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647, 649; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55, 62.

"In determining whether the Commission could have reasonably made its findings, and reached the conclusion it did reach, upon consideration of all the evidence before it, we view the record in a light most favorable to the findings of the Commission, consider the favorable inferences which the Commission had a right to draw from the evidence before it, and then determine whether the Commission's findings, even if supported by competent and substantial evidence, are contrary to the overwhelming weight of evidence in the whole record. Thacker v. Massman Const. Co., Mo.Sup., 247 S.W.2d 623, 627." Francis v. Sam Miller Motors, Mo.Sup., 282 S.W.2d 5, 11, 12. Considering the circumstances of the instant case and the type of review authorized, we deem it advisable to state the evidence in some detail.

Jess W. Hall testified that he was a heavy duty mechanic and that in July 1954, while employed by Spot Martin, Inc., he sustained injuries resulting from an accident which occurred when he tried to loosen a pump which was stuck, and in so doing fell backward about ten or fifteen feet. "The pump lit on the ground between my legs but when I lit, I lit on my back." He had another employee take him home and the next day called Dr. Davis, a chiropractor, who gave him approximately seven treatments for his back. He went back to work in two or three days, wearing a belt prescribed by Dr. Davis, but he intimated that he was unable to perform his full duties. His back kept hurting him and he stated that in October he was trying to pry an A-frame with a bar when he hurt his back again. "The twitch was still there." Also, in October, his employer sent him to Dr. Ogilvie who took X-rays and gave him heat treatments and then referred him to the clinic of Drs. Dickson and Diveley where he was examined and treated by Dr. Richard Kiene, an orthopedic surgeon. In the latter part of November Dr. Kiene caused the employee to be admitted to St. Luke's Hospital where he was placed in traction until December 3, 1954, at which time he was dismissed as definitely improved, wearing a low back support. On January 7, 1955, he went back to work, but he couldn't do the work of a mechanic and just stood around and watched the other employees, handing them wrenches and things they needed.

In regard to the second occurrence Hall testified: "I was putting a motor in the back of a distributor truck; it didn't line up with the channel, and I took a crowbar to push it over, and it was all I could do to push it over, and when I did, it caught me, this catch, or whatever—I don't know what to explain it—caught me, and I went down. That is all I can say." Thereafter, he described it in the following manner: "I changed one motor, took one motor out to put the other motor in, and started to push it in, and to line it up with the motor mounts in the holes, and that is when it caught me. I just turned everything loose.

"Q. What caught you? A. I don't know what you would call it; it hurt me so bad I couldn't move right in my back.

"The Referee: What caused you to be caught there? Do you know?

"The Witness: I don't know unless it was the way it—This hurting—It had been hurting me all the way through, and it caught me and turned me loose, and I was still trying to do what I was trying to do, and it folded me up." Still later, he indicated that this incident may have resulted from a crowbar slipping when he testified, "Q. Now, a while ago, when you were describing the incident in February, or March, when you were moving the motor, you said when you went to push it over with a crowbar, that it caught you in the back. A. When the bar went out of the hole; see what I mean?

"Q. And, that was when you got the catch in your back? A. Yes."

After this incident he was taken home, but continued to work thereafter until April 21, 1955, which was the last day that he ever worked. About that time he was placed in the hospital again for treatment and remained for 32 days, leaving the hospital, as he stated, because "I had no money to pay my own bill and the insurance people said they wouldn't pay it." It may be noted that in March or April, Hall worked for a time in the field, endeavoring to operate heavy machinery, but the rocking and jolting of the machines caused him such pain that he had to cease such work and go back to the shop.

It is perhaps of considerable significance to note that Hall testified that lots of days he didn't work; that his back had been hurting him ever since the first day he was hurt; that it would come and go; that he was never free from pain; that in the incident of February 1955, "I thought I hurt it all over again"; that the pains in his back had always been at the same place; that his leg had been "drawn" ever since the accident in July 1954; that every time he would reach over to pick up a wrench he would feel pain; that he had the same pain at the time of the incident in February that he had at the time he moved the A-frame in October; he "couldn't tell any difference"; that about January 7, 1955, he felt better for a short time while at the office of Dr. Kiene, but apparently this lasted only until he got down to his car, as indicated by his testimony, as follows: "I felt good; I never felt so good in my life; and, I told him, I said, 'Dr. Kiene,' I said, 'You got it'; and I walked out, and started to get in the car, and boy, she was there, again; yes, sir."

Maymie Hall, wife (now the widow) of claimant, testified that she is a registered nurse and had cared for claimant during the time he had been at home. She stated that since his injury in July 1954, Mr. Hall had never been completely well; that he seemed to be better in January of 1955, but was still very sick; that after he had been brought home on February 15, 1955, he had constantly gotten worse.

Waldon R. Stuerke, a fellow employee of claimant, testified that after Hall came back to work in the latter part of December 1954, he was able to do his work but he would not pick up anything very heavy. James Stuart worked with Hall in November 1954 and stated that his condition at that time was "awful poor"; that after he came back to work in January 1955, he didn't really do any work and complained of his back all the time; that he had not made a recovery and "never was right."

Dr. Richard Kiene, a qualified orthopedic surgeon, examined Mr. Hall on November 16, 1954, and treated him from that time until May 18, 1955. He stated that Hall was suffering from a herniated disc and that his right leg was one half inch shorter than the left; that on January 7, 1955, after a period of treatment in the hospital, he seemed much better. This indicated that the disc had receded so that there was no nerve root pressure at the time; that it is characteristic of a disc that the symptoms tend to be intermittent, and may disappear entirely for a period of months or years and then reappear either with or without subsequent injury; that if a man has had a protrusion of a disc it may recur as a result of any unusual movement of the back, as for example, when he may sneeze when in a certain position, or bend over to pick up a match or any twisting motion or strain of some kind; that if Hall had continued to improve as he had in January, and had had no recurrence, the disability resulting from his injury would not have exceeded five or ten per cent; that when he examined the patient on March 8 he had much more pain; and was much worse when examined on April 21 so that he caused him to be readmitted to the hospital on April 26, 1955; that his findings were essentially the same on March 8 as they were when he examined Hall in November 1954. He had had a recurrence of the same condition. In answer to a question

hypothesizing many of the facts heretofore stated, the doctor gave it as his opinion that the occurrence in February 1955 could have reherniated the disc and again caused impingement on the nerve.

Dr. Raymond A. McCanse, an orthopedic surgeon, examined Hall on June 8, 1955, and found that he was suffering from a herniated disc of the fifth lumbar vertebra. Apparently, he was the first doctor to discover that Hall was also suffering from a cancer of the prostatic gland which had metastasized into the spine and pelvic bones so that a resulting change in the third lumbar vertebra could then be detected in the X-rays. Dr. McCanse operated on Mr. Hall on July 6, 1955, and removed the herniated disc of the fifth lumbar. At the same time he intended to explore the interspace of the fourth lumbar where he suspected there might be another ruptured disc, and also the third lumbar vertebra in an effort to decipher the precise pathological change in that bone. However, after the disc was removed, the patient's blood pressure dropped to an alarming low level so that the operation had to be promptly discontinued without the exploration of the third and fourth vertebrae.

It may be here stated that from that time on, substantially all of the treatment of Mr. Hall was directed to relieving him of the intense pain from which he was suffering. In this connection, Dr. McCanse testified that the pain became intractable and he could not understand why Mr. Hall had all that pain, as cancer of the prostate was not ordinarily so painful. This doctor seemed to be definitely of the view that the pain was more than could be explained from the cancer alone. He further testified on the basis of the hypothesis that Hall continued to have pain during all of the time he tried to work, that the protrusion of the disc existed throughout all of that period. He did not feel that he could fairly divide the portion of the total disability due to the disc and the portion due to cancer, as he thought it was entirely possible that the disability could be considered total either way—"if he had had the disc and not had the cancer and continued to have the pain that he has had since the operation," he would consider him totally disabled, or if he had not had a disc he still would have been totally disabled.

Dr. Edward C. Weiford, a neurological surgeon, examined Mr. Hall on August 17, 1955, and diagnosed his condition as carcinoma of the prostate gland with metastasis to the spine. He said curative surgery was out of the question and the only step to pursue was palliative pain relief. In consultation with Dr. Irwin S. Brown and Dr. McCanse, it was agreed that a bilateral orchiectomy would be performed in an attempt to relieve his pain. This operation was performed by Dr. Brown but it failed in its objective and about three weeks later, Dr. Weiford performed a prefrontal lobotomy. Initially, this operation appeared to relieve the pain, but it was not effective for a very long period and after discharge from the hospital Mr. Hall had a further recurrence of pain. Dr. Weiford was of the view that the pain could be relieved by a bilateral anterolateral cordotomy if it appeared that the patient was going to live long enough to warrant further neurological surgical pain relief. In answer to hypothetical questions, Dr. Weiford stated the opinion that the pain from which the patient was suffering at the time he saw him was caused from the carcinoma and not from the herniated disc. He was of the further view that there was no causative relationship between the injury or injuries sustained by Mr. Hall and the carcinoma, although he stated it was possible that an existing carcinoma could have become symptomatic by reason of the accident.

On January 16, 1956, Dr. Robert M. Matthews, a resident surgeon at Kansas City General Hospital, began to care for Mr. Hall. This doctor was of the opinion that Mr. Hall would be totally and permanently disabled as long as he lived and that his disability was not amenable to treatment, in so far as seeking a recovery was concerned,

but that he needed treatment to relieve his pain and allow him to live as comfortably as possible. It was his opinion that Mr. Hall's pain, on the date he testified, was due both to the carcinoma and to the after effects of a herniated disc and its removal, and that he would be suffering from some disability from the trauma of the disc even though he had not had carcinoma.

It was estimated by Dr. J. A. Nigro, a surgeon and diagnostician, that Hall would have suffered a disability of 15 to 20 per cent after the disc was removed had there been no carcinoma present in this case. He also stated that there was a possibility that the surgery performed to remove the disc may have resulted in a weakened condition which may have caused the carcinoma to progress more rapidly.

Mr. Hall was examined by Dr. William Duncan, a surgeon, December 20, 1955. He found that the patient was suffering from generalized metastatic carcinoma with pain in the back and right leg. He further discovered that the carcinoma had spread to the lungs, to the bones of the skull, neck, vertebrae, and pelvis. It was his opinion that Mr. Hall was suffering both from the disc and the generalized cancer. He expressed the further view that the injury or injuries received by Mr. Hall would not cause the cancer. After reviewing the hospital records and considering certain hypothesized facts, the witness expressed the opinion that the herniated disc was due to the injury received in July 1954, although it may have been aggravated by some subsequent injury.

The last medical witness, Dr. C. E. Virden, whose practice was limited to radiology, had made certain X-rays of Mr. Hall in December 1955, and related his findings of the very extensive involvement of the skeletal structures with cancer. He also studied the X-rays taken by Dr. Kiene in November 1954, and stated that, with the benefit of his present knowledge of Mr. Hall's condition, he was able to see that the metastases were forming on the third

and fourth lumbar vertebrae in November 1954, and that they probably had been present for some time prior thereto. He was also of the opinion that the injuries received by Mr. Hall could not be connected with the "formation" of the carcinoma.

■ We will first consider the contention of Pacific that the Commission erred in finding "that the employee, Jess W. Hall, sustained an accident on July 10, 1954, * * * and that as a result of said accident, and that accident alone, he sustained 50 per cent permanent partial disability of his body as a whole * .* * and that all of the incidents and accidents described by the employee as occurring after July 10, 1954, were occasioned by the weakened condition of his back and were the result of the accident that occurred on or about July 10, 1954." In support of its position that the foregoing conclusions are not supported by the evidence, it is said by Pacific that the weight of the evidence requires a finding that Hall had sufficiently recovered from his previous injury so that he was able to return to work and, without further injury to his back, might have continued to be free of pain for the rest of his life, but that he sustained definite accidental injuries to his back on February 15, 1955, resulting in disability for which said insurer is not responsible. This contention involves a question of fact which it was the duty of the Commission to determine from all the facts and circumstances in the case. We do not agree with the contention of Pacific in this regard, but, on the contrary, are convinced that the quoted findings of the Commission are supported by competent and substantial evidence upon the whole record and are not contrary to the overwhelming weight of the evidence.

It will be noted that the Commission did not definitely find that Hall sustained an accident on February 15. The occurrence is referred to as an "accident or incident." That is perhaps due to the unsatisfactory testimony of Hall in that regard. It would appear from the first two times he de-

scribed the occurrence that he developed a "catch" in his back, while working, "and I went down." The third time he reviewed the incident he indicated that the "catch" developed when his bar "went out of the hole." In any event, it would seem unnecessary to determine whether that occurrence was or was not an accident in a legal sense, as the finding of the Commission that all the disability from Hall's back resulted from the accident of July 10, would exclude any inference that there was compensable disability resulting from the occurrence of February 15.

We have heretofore stated in considerable detail the evidence before the Commission and it would serve no useful purpose to here restate the parts thereof which relate to the issue now under consideration. We consider it sufficient to point out that there was ample evidence to support a finding that on February 15 Hall had never recovered from his previous injury. That is indicated by the testimony that he had not worked regularly or fully performed his duties; that his back pains had always been in the same place and he was never free of pain; and that the pain at the time of the incident in February was the same as the pain he experienced at the time of the October incident. There was substantial evidence to indicate that while the herniated disc may have receded to some extent, the protrusion continued to exist on February 15, 1955.

The Commission found that the incidents and accidents occurring after July 10 were occasioned by the weakened condition of the employee's back and resulted from the accident of that date. That would necessarily include a finding that on February 15, Hall had not recovered from the injuries received on July 10 and, as we have indicated, that finding is supported by the evidence. As we view the evidence it would support a finding that, regardless of whether the condition of Hall's back actually caused the incident of February 15, the pain and disability he experienced at that time was merely an acute symptom of the existing condition of his back (herniated disc) which had resulted from the accident of July 10. Incidents of this kind are often described as a recurrence of the original injury. We think it more accurate, under the instant evidence, to describe the occurrence as resulting in a more painful symptom of his existing back condition than he was accustomed to, as he had continually experienced less severe pain in the same place many times each day.

A general rule often applied in cases of this nature is that "a subsequent incident, or injury, may be of such a character that its consequences are the natural result of the original injury and may thus warrant the granting of compensation therefor as a part of that injury, but that, on the other hand, the facts and circumstances may be such as to establish the second injury as an independent, intervening cause, the effects of which cannot be included in computing the compensation allowable for the original injury, the determination of the question in each case being one of fact to be decided on the evidence." Annotation, 7 A.L.R. 1186. In Larson's, Workmen's Compensation Law, Vol. 2, par. 95.12, it is said that "If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. * * * This group also includes the kind of case in which a man has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion."

In Associated Industries Ins. Corp. v. Industrial Acc. Commission, 85 Cal.App. 184, 259 P. 110, 111, the court upheld a finding of the Industrial Commission that the disability following a second incident was caused by a prior injury as indicated

by the following: "The issue presented to the commission for its decision was whether the employee's disability subsequent to April 17, 1926, was caused by an injury happening upon that date, or was a new and further disability caused by the original injury of December 3, 1923. The commission found that the applicant 'on December 3, 1923, sustained injury occurring in the course of his employment arising out of his employment. * * *' The second finding of fact is 'on April 17, 1926, said injury caused new and further disability.' These findings are fully supported by the evidence. The employee testified, in substance, that his back was never strong after the original injury·he suffered, and that he had never felt the same as he did before he was hurt; that at times he was compelled to quit work; that about a week before the incident of April 17, 1926, he noticed his back becoming worse, and that the pains which he suffered were located in the same place as the pains he suffered in December, 1923; that the soreness was growing worse, until April 17, 1926, when he collapsed. There was medical testimony to show that the applicant had never completely recovered from his original injury, and that such injury was the proximate cause of his disability, and the second alleged injury was merely the occasion for him to know that he had further trouble with his back. It thus appears that there is substantial evidence to support the findings of the commission that the injury of December, 1923, was the cause of and contributed to the disability suffered from and after April 17, 1926."

Other cases supporting the views we have expressed herein are, Manley v. American Packing Co., 363 Mo. 744, 253 S.W.2d 165; New York Indemnity Co. v. Miller, 163 Okl. 283, 22 P.2d 107; United States Fidelity & Guaranty Co. v. Industrial Acc. Commission, 95 Cal.App. 186, 272 P. 589; Gallagher v. Hudson Coal Co., 117 Pa.Super. 480, 178 A. 161; Harnischfeger Corp. v. Industrial Commission, 253 Wis. 613, 34 N.W.2d 678; and In re Rock's Case, 323 Mass. 428, 82 N.E.2d 616.

Pacific contends that the case of Oertel v. John D. Streett & Co., Mo.App., 285 S.W.2d 87, is directly in point and supports its contention that Hall's disability subsequent to February 15, 1955, resulted from the accident that occurred on that day. In that case claimant sustained a disc injury to his back on March 24, 1952. He received treatment and returned to work wearing a belt. On August 23, 1952, while fielding a ball in a softball game, he felt a sudden pain in his back. The commission awarded permanent partial disability for the injury of March 24, but held that the occurrence of August 23 was a new, independent, and intervening cause and that the employee was not entitled to compensation for the disability resulting therefrom. This award was affirmed by the court of appeals. We think the Oertel case may be distinguished from the instant case upon the facts. In Oertel, the employee had discarded his belt in May, and in June and July was able to do some heavy lifting. Several times in June he felt slight pain in his back but in July (and apparently during the first 23 days of August) he had no pain. This is much different from the situation before us. Moreover, it should also be noted that the court, in Oertel, merely upheld the findings of the Commission on what was essentially a fact question.

The next point briefed by Pacific is that there is no competent evidence from which it could reasonably be inferred that Hall sustained fifty per cent disability to the body as a whole as a result of the accident of July 10, 1954. In support of this contention Pacific points to the testimony of Dr. Kiene rating the disability in January 1955 at from five to ten per cent, and the estimate of Dr. Nigro in answer to a hypothetical question, of fifteen to twenty per cent disability if Hall had not had cancer. It should be here stated that the estimate of Dr. Kiene was based upon the assumption that Hall would continue to improve and

would not have a recurrence of the disc protusion. We also note that Dr. McCanse testified that when a disc is removed the disability will usually run about 25 to 30 per cent of the body as a whole.

It was not disputed that at the time of the final hearing Hall was totally and permanently disabled. A number of the expert medical witnesses testified that the disability was due both to the cancer and the disc, but they were understandably reluctant to attempt to divide the percentage of disability due to each. It should be noted, however, that Dr. McCanse made certain statements indicating that either of those conditions might have totally disabled Hall. There was also evidence that a portion of Hall's pain was caused by the disc and that the lobotomy was performed to relieve the pain. A lobotomy can render a person mentally incompetent. Dr. Duncan testified that Hall was mentally incompetent and that his incompetency was caused either by the lobotomy or the cancer, he "couldn't break it down and tell which."

It was not necessary for the claimant to show the extent of his disability with mathematical exactness and the Commission was not required to necessarily accept the percentage estimates testified to by the experts. It was the special province of the Commission to determine from all the evidence before it the percentage of disability directly attributable to the accident. Johnson v. Fogertey Bldg. Co:, Mo.App., 194 S.W.2d 924. We have concluded from a review of the whole record that the finding of the Industrial Commission as to the disability sustained by Mr. Hall is supported by competent and substantial evidence and is not contrary to the overwhelming weight of the evidence.

In view of the foregoing discussion of the amount of disability sustained by Mr. Hall we will next consider the contention of plaintiff-appellant, Maymie S. Hall, that the award of the Commission should have been based on total and permanent disability. Our discussion of the preceding point, and a review of the evidence heretofore detailed, should demonstrate that the action of the Commission in awarding compensation for fifty per cent disability, and its failure to make an award based upon total and permanent disability resulting from the accident of July 10, 1954, may not be said to be against the overwhelming weight of the evidence, and hence there is no merit in plaintiff's appeal.

The final award directed Pacific to pay certain hospital, nursing, and medical expenses totaling $4,174.37 which were incurred by Mr. Hall during a period extending from May 18, 1955, to March 2, 1956. Pacific contends that in ordering it to pay those items the Commission acted in excess of its powers because a substantial part of those expenses are said to have been incurred in an effort to relieve the employee from the pain resulting from the cancer.

It is provided in Section 287.140(1), RSMo 1949, V.A.M.S., that the "employer shall provide such medical, surgical and hospital treatment, including nursing, ambulance and medicines, as may reasonably be required * * * to cure and relieve from the effects of the injury * * *." The dispute herein relates to items for hospital, surgical and medical services rendered in an effort to make Mr. Hall more comfortable and to relieve him from pain. As we have heretofore stated, there is substantial evidence to the effect that the pain from which Hall suffered was caused both by the disc injury and by the cancer. The Commission found that Pacific "is liable to this employee * * * for all the medical and hospital expenses incurred by employee to cure and relieve him of his disability relating to his back * * *." It is evident that in ordering the payment of the instant expenses the Commission had the view that such services were necessary in order to relieve the employee from pain resulting from the injury and disability to his back, and the fact that such services may have also given relief from the pain caused by the cancer would not relieve Pacific from

liability therefor. No case has been cited which deals with a situation of that kind and we have not found any. However, after reviewing the evidence, the findings of the Commission, and the provisions of the statute heretofore cited, we have concluded that we cannot say that the instant finding was against the overwhelming weight of the evidence, or that the Commission acted in excess of its powers in directing the payment of the disputed items.

The judgment of the circuit court affirming the final award of the Industrial Commission is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.