Harry W. DIXON, Jr., Appellant,

v.

ART BUNKER MOTORS, INC., and Travelers Insurance Company, Respondents.

No. 24080.

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1964.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 1, 1965.

———◆———

Harry Weed, Garrett, Weed & Jones, Kansas City, for appellant.

Jack B. Robertson, Rogers, Field & Gentry, Kansas City, for respondents.

HUNTER, Judge.

This is a workmen's compensation claim by Harry W. Dixon, Jr., appellant, for specified disability resulting from an accident occurring on April 24, 1961. Respondents, Art Bunker Motors, Inc., is the employer and Travelers Insurance Company is the insurer. The Referee and Industrial Commission denied compensation. The circuit court affirmed the denial award of the Industrial Commission and this appeal followed.

In his claim for compensation claimant alleged that the parts of his body injured were "Back, legs, head, right wrist." He also alleged that the exact nature of his permanent injury was "Severe sprain of the muscles and soft tissues in plaintiff's back and rupture of intervertebral discs in plaintiff's lumbar spine with resulting headaches and leg pains." His complaints at the time of the hearing before the Referee on July 16, 1961, which he attributed to the April 24th, 1961 fall were, "I have a small amount of pain in my low back, which sometimes becomes severe, and I have a burning area into both sides of my hip. When my low back pain becomes severe I wear my corset."

The Referee made the following finding and award: "* * * the employee, Harry W. Dixon, Jr., sustained an accident on April 24, 1961, arising out of and in the course of his employment with Art Bunker Motors, Inc., resulting in alleged injuries to the head, neck, back, legs and right wrist, for which he has been fully compensated.

"I further find that although said employee incurred medical expense after the first ninety days following the date of the accident herein, for which he is claiming reimbursement, he did not secure authority therefor from the employer or insurer, nor did he secure an order from the Division of Workmen's Compensation determining such treatment to be necessary and reasonable. An order to pay such medical expenses incurred after said ninety-day period is therefore denied.

"Additional compensation therefore must be, and the same is, hereby denied."

As a result of its review, the Industrial Commission's Final Award denying compensation read: "We find from all of the evidence that the employee sustained an accident on April 24, 1961, arising out of and in the course of his employment with Art Bunker Motors, Inc.

"We further find from the weight of the credible evidence that the condition complained of by the employee was not causally related to said accident and, further, that he sustained no disability as a result of said accident.

"Compensation, therefore, must be and the same is hereby denied."

Since claimant contends the findings and award of no compensation by the Industrial Commission are not supported by competent and substantial evidence and are contrary to the overwhelming weight of the evidence

it is necessary to state the evidence in some detail. This evidence consisted of the testimony of claimant, stipulations of counsel, and certain medical and hospital reports.

On April 24, 1961, about 3:30 p. m. claimant in the course of his employment was descending an aluminum step ladder with his back to the steps and with automotive parts in his hand. The ladder wobbled, causing him to fall some twelve rungs to the concrete floor below. His head and back struck the rungs of the ladder as he fell and he lit in a sitting position with his legs tangled underneath and his wrist down. "I crushed my ring into my right ring finger and I sprained my right wrist and there was considerable soreness throughout my body."

Claimant remained on the job until quitting time that day. He saw a chiropractor. He worked the next day, April 25th, although he "didn't feel so good." He also worked on April 26th, and on that day another incident occurred which can be best described by direct reference to his testimony. "Q. Following this occurrence with the ladder, didn't you hurt yourself out there lifting a case of oil? A. Yes, I was taking the oil from the deck lid and that is when I started getting the numbness and the loss of partial use of my legs. I didn't have too much feeling from here down to the top of my knees (Indicating). Q. It was after you injured your back lifting the case of oil that you first went to see the doctor, wasn't it? A. I believe that's correct." Claimant's brief gives the following statement of this incident: "Subsequent to the fall from the ladder and prior to his admission to Lakeside Hospital, he strained the injured portion of his back in lifting and taking a case of oil from a deck lid and 'that is when (he) started getting the numbness and the loss of partial use of (his) legs.'"

The Lakeside Hospital report concerning this incident read, "Several days later (after ladder accident) pt. was lifting and strained injured portion of back which was followed by heaviness & difficulty in lifting legs.

He also had severe headaches. Tentative Diagnosis—Low back strain. Final Diagnosis—Acute lumbar sacro strain."

On April 26th claimant again worked but he complained to his employer's parts manager that he was "suffering quite a bit of pain and having trouble standing". He was thereupon sent to Doctors Zauder and Zuril who in turn had him admitted to Lakeside Hospital at 3:00 p. m. on April 26, 1961.

Claimant was in Lakeside Hospital for eight days, from April 26, to May 3, 1961. While there he was x-rayed, given injections, traction and physical therapy.

After his discharge on May 3, 1961, from Lakeside Hospital claimant returned to Dr. Zauder and Zuril's Clinic two or three times and was released. Claimant stated that even though they had released him he "didn't feel they done me any good, I was still suffering from most everything I had originally went in the hospital with. I wasn't satisfied so I went to talk with Mr. Bunker and he suggested Dr. Overesch who he said was his insurance company's doctor * * *." This was about a week after his discharge from Lakeside Hospital, and he saw Dr. Overesch who examined him, gave him a prescription for a support garment, a heat treatment and sent him to Jackson's Physical Therapy Clinic where he received numerous treatments from May 23rd to July 14, 1961. Dr. Overesch then ordered these treatments stopped and advised him that he was "dismissed".

Claimant again complained to Mr. Bunker and he was discharged as an employee. On April 26th, or much more probably on June 28, 1961, claimant was involved in another incident involving a little girl who ran into the path of his automobile. Both appellant and respondent in the briefs treat the automobile incident as having taken place on June 28, 1961. Again we refer specifically to claimant's testimony. "A. The accident (ladder fall) happened about three-thirty and I stayed until quitting time and I went home and the next day I came to

work and worked. I didn't feel so good, but I did work. The day after that was when I first went to the doctor, which is when I had the accident you are referring to. Q. With the little girl? A. Yes, that is the accident he was referring to, I suppose. That was the 26th, if I am not mistaken. I was considerably sore at the time."

The Research Hospital record contained two entries concerning this event. One of these entries read, "This pt. was involved in an automobile accident & has subsequently suffered severe back pains radiating into legs." The other mentioned hospital entry stated, "pt. was involved in an auto accident May 61, since this time he has had pain in the lumbar and dorsal areas of the back. Pain in renal areas, paresthesia in feet, pain in neck, back of head and headaches." When asked about those entries claimant stated, "A. It wasn't an automobile accident. A little girl ran out into the side of my moving automobile. We didn't collide and I didn't hit the little girl. We went to Court over it and they found me 'Not Guilty.' Q. Did you have to make a sudden stop? A. Yes, I did, to keep from killing her. Q. And that caused you to have pain in the back? A. This was after the accident at Art Bunker's. Q. This automobile accident was after the occurrence at Art Bunker's when you fell down the ladder? A. Yes, sir. Q. Do you remember telling Dr. Graham this: 'Patient was involved in an auto accident in May, 1961, since this time he has had pain in the lumbar and dorsal areas of the back.' Did you make that statement to Dr. Graham? A. I didn't make it as you have it there. I do remember making a statement, but not that one. Q. Do you remember telling Dr. Graham on November 20, 1961, that you were involved in an automobile accident and had subsequently suffered with severe back pain, radiating into the legs? A. Yes, sir. Q. You told him that? A. Yes."

Dr. Overesch (of Drs. Zuber and Overesch's medical office) in a written report dated July 7, 1961, stated, "The above captioned patient was re-examined in this office on June 28, 1961, and the following report is submitted.

"When the patient appeared this morning for re-examination he appeared to be quite nervous and upset because as he states he almost ran over a little girl in his car the night previously."

On July 31st, without the knowledge or permission of his former employer or of the Workmen's Compensation Division, he went to Dr. Graham. He commenced work at a filling station on November 3, 1961. On November 19, 1961, Dr. Graham hospitalized him in Research Hospital. There he was examined and given a myelogram test, physical therapy and injections. He was in Research Hospital eight days, from November 19, to November 26, 1961, under the care of Dr. Graham with Doctors Lewis and Smith in consultation. Dr. Graham's report recited what claimant told him about his fall from the ladder on April 24, 1961, and gave these conclusions of the result of his examination of claimant: "These signs and symptoms reveal definite nerve indication of a herniated disc. In my opinion this patient has sustained a definite permanent injury to the central nervous system. Certain nerve tracts to the brain have been permanently injured.

\*     \*     \*     \*     \*     \*

"Diagnosis: (1) Relapsing herniated intervertebral disc between four and five lumbar, (2) Lumbodorsal neuromyositis, (3) Ligament tears, (4) Cervical neuromyositis, (5) Dorsal fibrositis." By supplemental report dated July 18, 1962, Dr. Graham rated claimant as having a permanent partial disability of seventy-five per cent of the body as a whole.

Dr. Graham's bill in the sum of $150.00 was admitted into evidence by agreement. Claimant testified the amount of the bill for Research Hospital was $346.88; Dr. Revis Lewis, $110.00; the anesthetist, $20.-00; and Dr. Ira T. Smith, $90.00.

Prior to the April 24, 1961 ladder incident claimant had suffered three accidents from which he had substantial complaints of

injury referable to his back. On October 22, 1958, while working for the M. & F. Drywall Company he fell while sanding a ceiling "injuring my right wrist, left hand, left leg and ankle and my right shoulder and I had soreness in my back and I had pretty severe headaches and in general I was pretty sore." He settled the resulting Workmen's Compensation claim for $2,660.-50. On December 8, 1959, at a Safeway Store he slipped on a foreign particle on the floor "and I struck the back of my head on one of the metal push carts and I lit on my right hand, spraining my wrist. * * *" He was treated for that fall by a Dr. Pardo, an osteopathic physician. His complaints were of pain in the lumbo-sacral area, soreness in the legs and pain in the lower back.

In the winter of 1960 claimant was involved in a rear end automobile collision. "I got what the doctor said was a whiplash and I was considerably stiff and again had headaches and was pretty uncomfortable" * * * There was "soreness from my waist line to my neck". His resulting complaint to Dr. Korth was of "a tired sensation associated with pain and stiffness in the low back." He had this pain "periodically but not every minute of the day". He settled a claim for that injury for $750.00. Claimant testified that he had recovered from the effects of these three accidents prior to his April 24, 1961 ladder fall.

In reviewing a compensation case our duty and that of the circuit court is to determine whether the Commission's award is supported by competent and substantial evidence upon the whole record. Sec. 22, Art. V, Const. of Mo.1945, V.A. M.S. The reviewing court may not substitute its own judgment on the evidence for that of the Commission. However, the reviewing court is authorized to decide whether the Commission could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Hall v. Spot Martin, Mo. Sup., 304 S.W.2d 844.

In the process of determining whether the Commission could have reasonably made its findings, and reached the conclusion it has reached upon consideration of all the evidence before it, we view the record in a light most favorable to the findings of the Commission, consider the favorable inferences which the Commission had a right to draw from the evidence before it, and then determine whether the Commission's findings, even if supported by competent and substantial evidence, are contrary to the overwhelming weight of evidence on the whole record. Francis v. Sam Miller Motors, Mo.Sup., 282 S.W.2d 5.

Our first question, which we acknowledge is a close one, is whether the Commission's award is supported by competent and substantial evidence. It must be emphasized that the Industrial Commission did not find that claimant is not suffering from any disability but rather that on the record before it, the Commission was of the view that he sustained no disability as a result of the April 24, 1961 accident.

Our conclusion is that the Commission's award is supported by competent and substantial evidence. We refer briefly to those facts which we deem persuasive of the question. *Following his fall on April 24, 1961, claimant finished his work day and continued to work the two following days. It was then that he injured his back lifting a case of oil. It was not until after he had injured his back lifting the case of oil that he sought any medical aid.* While there is a passing mention of his having seen a chiropractor there is nothing in the record to demonstrate that this had anything to do with his presently litigated complaints he attributes to his fall on April 24, 1961. Indeed, there is no suggestion that he made any complaints to, or was examined by, or treated by the

chiropractor for anything. It is even somewhat hazy as to whether he saw the chiropractor before or after the oil lifting accident. We believe the related evidence is sufficiently substantial and competent to support the Commission's conclusion that it was not the April 24, 1961 ladder accident that caused whatever injuries of which claimant later complained. It was within the exclusive province of the Commission to decide the inferences to be drawn from the evidence, and under these facts we are unwilling to rule that the particular inferences it must have drawn to reach the result announced in its final award were arbitrary or unreasonable as a matter of law.

Also of some support to the Commission's award is the evidence concerning claimant's automobile incident involving the little girl who ran into the path of his car causing a violent application of the car's brakes and a sudden stop, resulting in severe back pain, particularly in the lumbar and dorsal regions, with the severe pain radiating into the legs. The injuries resulting from the sudden stopping of the car could be viewed as not attributable to the April 24, 1961 ladder incident. Hall v. Spot Martin, supra, 304 S.W.2d loc. cit. 852(5).

On June 28, 1961, claimant was examined by Dr. H. B. Overesch who at that time found no evidence of any residual disability of an orthopedic nature. Claimant was re-examined on September 7, 1962, by Dr. Harold V. Zuber who at that time found no objective evidence of disability due to trauma in claimant's back or neck. Dr. W. P. Williamson, a neutral examiner, on September 22, 1962, examined claimant and found no objective evidence of disability. While Dr. Wallace Graham in consultation with Dr. Lewis diagnosed a relapsing type of herniated intervertebral disc, the Industrial Commission had the right to accept the evidence of Drs. Overesch, Zuber and Williamson as persuasive. It is noteworthy that in the later one of Dr. Graham's two reports, the report did not state specifically that his findings concerning claimant were

the result of the April 24, 1961 accident. Rather, the only reference in this report indicative of the cause of claimant's complaints was, "He gave a history of having been in an accident in May, 1961, and has had severe continuous pain in the lower back radiating down the legs since that time." This reference could have been to the incident involving the sudden stop to avoid hitting the little girl. Claimant's counsel treats this incident as having occurred on June 28, 1961, which is prior to claimant's first visit to Dr. Graham on July 31, 1961.

As earlier indicated our conclusion, in view of the limited scope of judicial review in this type of case, is that there is competent and substantial evidence upon the whole record to support the Industrial Commission's award, and that the award is not clearly contrary to the overwhelming weight of the evidence.

Claimant also contends the Commission erred in denying his request for additional findings of fact. This request, submitted prior to the entry of the final award by the Commission, asked: "1. Whether said employee had any permanent partial disability at the time of his examination by Dr. Graham Wallace on or subsequent to July 31, 1961, and if so, how much? 2. Whether said employee had any permanent partial disability prior to the time of his alleged injury on April 24, 1961, and if so, how much?

■ Findings of facts are required by Sections 287.460 and 287.490 RSMo 1959, V.A.M.S., and one of the questions on appeal, as provided in Sec. 287.490 is whether the facts found by the Commission support the award. The finding of facts should be sufficient to show how the controlling issues have been decided. Otherwise the reviewing court will be unable to know what the Commission has really determined in order that it may know what to review, and whether or not correct rules of law have been applied to facts which properly could be found on the particular record.

Groce v. Pyle, Mo.App., 315 S.W.2d 482; Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136, 142. As expressed by Judge Hyde in Finerson v. Century Electric Co., Mo.Sup., 227 S.W.2d 740, 746: " * * plain, straightforward unambiguous findings should be made at least as to the essential controverted ultimate facts. * * * If the Commission does not make a finding on essential controverted facts, the Appellate Court will likely presume (if there is substantial evidence to support it) that the facts were decided in whatever way is necessary to fit the result. Thus a litigant might lose without either the Commission or the Court actually deciding a disputed controlling fact issue. That is why the Commission should make findings on the really controlling fact issues."

■ Has the Commission in the instant case met the statutory fact finding requirements? We think it has. It has specifically found that claimant suffered no disability as a result of the accident on April 24, 1961, and that the conditions about which he complained were not causally related to that accident. The requested findings were not essential to an understanding of what the Commission determined in making its final award, nor to a judicial review of it. It would be unreasonable and unsound to require the Commission to determine which one or more, if any, of the many other accidents claimant has experienced caused the physical conditions of which he complained at the hearing. It also would be unreasonable to require the Commission to determine whether claimant had a permanent partial disability when he was examined by Dr. Wallace on and subsequent to July 31, 1961, and if so, how much; or to determine whether he had any permanent partial disability from *any* cause prior to the time of his alleged injury on April 24, 1961; and if so, how much. Such findings would be on matters other than the relevant and decisive issue of what disability, if any, claimant suffered in the April 24, 1961 accident. Claimant has the burden of proof on that issue, but no one

had any duty to provide evidence on how or when the conditions claimant complained of occurred, if they did not occur as a result of the April 24, 1961 accident. Thus, claimant would have us require the Industrial Commission to make findings regarding matters which were not the ultimate fact issues, nor a disputed controlling fact issue, nor essential to an understanding of the Commission's award or to a judicial review of it, and upon matters that the record is insufficient to provide a basis for determination. We do not believe the mentioned statutory sections required the Industrial Commission to make findings of fact of the kind requested, and the Industrial Commission did not err in overruling the request.

■ The Commission, of course, must always find the ultimate fact or facts upon which its award rests. It is unnecessary and, hence, not required, that the Commission make additional findings of fact, which are not ultimate facts, except in those circumstances where necessary to reveal the true basis of its decision in sufficient particularity to permit a proper review of that decision by the reviewing court.

■ Claimant's final contention is that the Commission erred in not requiring the employee and insurer to pay the medical expenses of $756.88 incurred by claimant after the first ninety days and after both liability and further medical treatment were denied to claimant by the employer and insurer. See, Section 287, 140 RSMo 1959, V.A.M.S. However, this matter is necessarily resolved as a result of our holding that the Commission's findings that claimant sustained no disability as a result of the April 24, 1961 accident was supported by competent and substantial evidence and was not clearly contrary to the overwhelming weight of the evidence. A claimant who has suffered no disability as a result of the accident upon which he premises his recovery is not entitled to hospitalization for possible disability resulting from some other accident or some other cause.

For the reasons set out above, the judgment of the circuit court affirming the Industrial Commission's final award of no compensation is affirmed.

All concur.